UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                           X
THE NEW YORK TIMES COMPANY                 :
620 8th Avenue
New York, NY 10018                         :

and                                        :

CHARLIE SAVAGE                             :
1627 I St., NW
Suite 700                                  :       No. 19-cv-03562-ABJ
Washington, DC 20006
                                           :
                    Plaintiffs,
                                           :
          - against -
                                           :
OFFICE OF MANAGEMENT AND BUDGET
725 17th St., NW
Washington, DC 20503
                                           :
                    Defendant.
                                           :
_____X


## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs The New York Times Company and Charlie Savage ("The Times"), by their undersigned attorneys, respectfully move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. There are no genuine issues of material fact as to any of The Times's claims, and judgment as a matter of law is appropriate. This motion is supported by the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment and the Declaration of David E. McCraw. A proposed order is also attached.

Respectfully submitted,

/s/ David E. McCraw
David E. McCraw
Alexandra Perloff-Giles
Legal Department
The New York Times Company
620 8th Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
E-mail: mccraw@nytimes.com

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————————————————————————— X

THE NEW YORK TIMES COMPANY                    :
620 8th Avenue
New York, NY 10018                            :

and                                           :

CHARLIE SAVAGE                                :
1627 I St., NW
Suite 700                                     :        No. 19-cv-03562-ABJ
Washington, DC 20006
                                              :
                        Plaintiffs,
                                              :
            - against -
                                              :
OFFICE OF MANAGEMENT AND BUDGET
725 17th St., NW                              :
Washington, DC 20503
                                              :
                        Defendant.
                                              :
————————————————————————— X


# MEMORANDUM OF POINTS AND AUTHORITIES
# IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

David E. McCraw
Alexandra Perloff-Giles
The New York Times Company
Legal Department
620 Eighth Avenue
New York, NY 10018
Phone: 212-556-4031
Facsimile: (212) 556-4634
Email: mccraw@nytimes.com

*Counsel for Plaintiffs*

# **TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

   I.    The Subject of the FOIA Request ............................................................................. 2

   II.   The FOIA Request and the Instant Litigation ................................................................ 4

JURISDICTION ............................................................................................................. 6

ARGUMENT ................................................................................................................. 6

   I.    The Scope of the Presidential Communications Privilege Is Limited ................................. 8

   II.   The Scope of the Deliberative Process Privilege Is Limited......................................... 13

   III.  Any Exemption 5 Privilege That May Otherwise Apply Cannot Be Used to Hide
Government Misconduct.................................................................................................. 15

   IV.  Any Exemption 5 Privilege That May Otherwise Apply Has Been Waived ................. 19

   V.   The Government Cannot Satisfy Its Additional Burden Under The FOIA Improvement
Act   20

   VI.  At a Minimum, *In Camera* Review Is Warranted ......................................................... 23

CONCLUSION ............................................................................................................. 24

# TABLE OF AUTHORITIES

**CASES**

*100Reporters LLC v. U.S. DOJ,*
   248 F. Supp. 3d 115, 155 (D.D.C. 2017) ................................................................. 19
*ACLU v. CIA,*
   710 F.3d 422 (D.C. Cir. 2013) ................................................................................ 19
*ACLU v. DOD,*
   628 F.3d 612 (D.C. Cir. 2011) ................................................................................ 19
*Am. Ctr. for Law & Justice v. U.S. Dep't of State,*
   330 F. Supp. 3d 293 (D.D.C. 2018) ................................................... 10, 12, 13, 14
*Baker & Hostetler LLP v. U.S. Dep't of Commerce,*
   473 F.3d 312 (D.C. Cir. 2006) .................................................................................. 7
*Bartko v. U.S. DOJ,*
   2018 U.S. Dist. LEXIS 163700 (D.D.C. Sept. 25, 2018) ............................... 16, 17
*Bishopp v. District of Columbia,*
   1984 U.S. Dist. LEXIS 18533 (D.D.C. Mar. 16, 1984) .......................................... 11
*Chiquita Brands Int'l, Inc. v. SEC,*
   805 F.3d 289 (D.C. Cir. 2015) .................................................................................. 6
*Coastal States Gas Corp. v. Dep't of Energy,*
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................ 14
*Ctr. for Biological Diversity v. OMB,*
   2009 U.S. Dist. LEXIS 38169 (N.D. Cal. 2009) ........................................... 9, 10, 11
*Ctr. for Effective Gov't v. U.S. Dep't of State,*
   7 F. Supp. 3d 16 (D.D.C. 2013) .................................................... 9, 10, 12, 19
*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*
   2019 U.S. Dist. LEXIS 223077 (D.D.C. Dec. 31, 2019) ....................................... 21
*Cuban v. SEC,*
   744 F. Supp. 2d 60 (D.D.C. 2010) ........................................................................... 8
*Dep't of Air Force v. Rose,*
   425 U.S. 352 (1976) .................................................................................................. 6
*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
   532 U.S. 1 (2001) .................................................................................................... 13
*Dep't of State v. Ray,*
   502 U.S. 164 (1991) .................................................................................................. 6
*Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.,*
   2004 U.S. Dist. LEXIS 29433 (D.D.C. Aug. 2, 2004) ........................................... 23
*Enviro Tech Int'l, Inc. v. U.S. EPA,*
   371 F.3d 370 (7th Cir. 2004) .................................................................................. 18
*Envtl. Prot. Agency v. Mink,*
   410 U.S. 73 (1973) ........................................................................................... 13, 14
*Hall v. CIA,*
   881 F. Supp. 2d 38 (D.D.C. 2012) ......................................................................... 23

*ICM Registry, LLC v. U.S. Dep't of Commerce*,
 538 F. Supp. 2d 130 (D.D.C. 2012) ..................................................................... 16
*In re Sealed Case*,
 121 F.3d 729 (D.C. Cir. 1997) ................................................................... *passim*
*Isley v. Exec. Office for the U.S. Attorneys*,
 1999 U.S. App. LEXIS 29721 (D.C. Cir. Oct. 21, 1999) ...................................... 8
*Judge Rotenberg Educ. Ctr., Inc. v. U.S. FDA*,
 376 F. Supp. 3d 47 (D.D.C. 2019) ........................................................................ 7
*Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*,
 102 F. Supp. 3d 6 (D.D.C. 2000) ......................................................................... 16
*Judicial Watch, Inc. v. DOJ*,
 365 F.3d 1108 (D.C. Cir. 2004) .............................................................. 8, 9, 11, 12
*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
 2017 U.S. Dist. LEXIS 215144 (D.D.C. Aug. 21, 2017) .................................... 17
*Judicial Watch, Inc. v. U.S. Dep't of Commerce*,
 375 F. Supp. 3d 93 (D.D.C. 2019) .................................................................. 21, 22
*Judicial Watch, Inc. v. U.S. DOJ*,
 2019 U.S. Dist. LEXIS 163473 (D.D.C. Sept. 24, 2019) .................................... 21
*Judicial Watch, Inc. v. U.S. Dep't of State*,
 241 F. Supp. 3d 174 (D.D.C. 2017) ..................................................................... 17
*Judicial Watch, Inc. v. U.S. Dep't of State*,
 285 F. Supp. 249 (D.D.C. 2018) .......................................................................... 17
*Krikorian v. Dep't of State*,
 984 F.2d 461 (D.C. Cir. 1993) ............................................................................... 8
*Kwoka v. IRS*,
 2018 U.S. Dist. LEXIS 167547 (D.D.C. Sept. 28, 2018) ...................................... 8
*Lardner v. U.S. DOJ*,
 2005 U.S. Dist. LEXIS 5465 (D.D.C. Mar. 31, 2005) ......................................... 15
*Loving v. DOD*,
 550 F.3d 32 (D.C. Cir. 2008) ............................................................................. 7, 9
*Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force*,
 566 F.2d 242 (D.C. Cir. 1977) ......................................................................... 7, 13
*Milner v. Dep't of the Navy*,
 562 U.S. 562 (2011) ............................................................................................... 6
*Morley v. CIA*,
 508 F.3d 1108 (D.C. Cir. 2007) ......................................................................... 7, 8
*Nat'l Sec. Archive v. CIA*,
 752 F.3d 460 (D.C. Cir. 2014) ....................................................................... 13, 14
*Nat'l Whistleblower Ctr. v. HHS*,
 903 F. Supp. 2d 59 (D.D.C. 2012) ....................................................................... 16
*Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*,
 19 F. Supp. 3d 1 (D.D.C. 2013) ..................................................................... 16, 18
*Neuman v. United States*,
 70 F. Supp. 3d 416 (D.D.C. 2014) ....................................................................... 23
*Nixon v. Administrator of General Services*,
 433 U.S. 425 (1977) ............................................................................................. 15

iv

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975).......................................................................................... 13
*N.Y. Times Co. v. U.S. DOJ*,
    752 F.3d 123 (2d Cir. 2014)............................................................................. 19
*Oglesby v. Dep't of the Army*,
    920 F.2d 57 (D.C. Cir. 1990)......................................................................... 4, 23
*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
    976 F.2d 1429 (D.C. Cir. 1992)..................................................................... 7, 13
*Prop. of the People, Inc. v. OMB*,
    330 F. Supp. 3d 373 (D.D.C. 2018)............................................................... 10, 11
*Pub. Citizen, Inc. v. OMB*,
    569 F.3d 434 (D.C. Cir. 2009)........................................................................ 6, 13
*Reinhard v. Dep't of Homeland Sec.*,
    2019 U.S. Dist. LEXIS 115282 (D.D.C. July 11, 2019)................................. 16, 17
*Rosenberg v. U.S. Dep't of Def.*,
    342 F. Supp. 3d 62 (D.D.C. 2018) ................................................................. 21
*Samahon v. U.S. DOJ*,
    2015 U.S. Dist. LEXIS 23813 (E.D. Pa. Feb. 27, 2015) ............................... 10, 19
*Tax Reform Research Grp. v. IRS*,
    419 F. Supp. 415 (D.D.C. 1976)..................................................................... 16, 18
*The Wilderness Soc'y v. U.S. Dep't of the Interior*,
    344 F. Supp. 2d 1 (D.D.C. 2004).................................................................... 8
*United States v. Nixon*,
    418 U.S. 683 (1974)....................................................................................... 15
*Wisdom v. United States*,
    266 F. Supp. 3d 93, 107 (D.D.C. 2017).......................................................... 16
*Wright v. Admin. for Children & Families*,
    2016 U.S. Dist. LEXIS 140314 (D.D.C. Oct. 11, 2016)................................. 17

## STATUTES

5 U.S.C. § 552.............................................................................................. *passim*
Impoundment Control Act, 2 U.S.C. § 686 .................................................. 18

## LEGISLATIVE HISTORY

114 Cong. Rec. S1494 (Mar. 15, 2016) (Statement of Sen. Grassley) ....................... 20
114 Cong. Rec. S1496 (Mar. 15, 2016) (Statement of Sen. Leahy) ........................... 20
FOIA Oversight and Implementation Act of 2015, H.R. Rep. No. 114–391 ........... 13, 20
Staff Report, U.S. House of Rep., Comm. On Oversight and Gov't Reform, *FOIA Is Broken: A
    Report* (Jan. 2016)...................................................................................... 20

## OTHER AUTHORITIES

Ballotpedia, Donald Trump White House Staff.............................................................. 3
Charlie Savage & Eric Lipton, *White House Withholds 20 Emails Between Two Trump Aides on
    Ukraine Aid*, N.Y. Times (Jan. 3. 2020) .............................................................. 3, 20

Emily Cochrane, Eric Lipton & Chris Cameron, *G.A.O. Report Says Trump Administration Broke Law in Withholding Ukraine Aid*, N.Y. Times (Jan. 17, 2020)........................................ 1

Eric Lipton, Maggie Haberman & Mark Mazzetti, *Behind the Ukraine Aid Freeze: 84 Days of Conflict and Confusion*, N.Y. Times (Jan. 16, 2020) ......................................................... 14, 20

House Permanent Select Committee on Intelligence, The Trump-Ukraine Impeachment Inquiry Report (Dec. 2019)...................................................................................................................... 2

House Permanent Select Committee on Intelligence, Committee on Oversight and Reform, & Committee on Foreign Affairs, Deposition of Mark Sandy (Nov. 16, 2019)............................. 2

Kyle Cheney, *Trump Elevates Mulvaney Aide Weeks After He Defied Impeachment Subpoena*, Politico (Dec. 23, 2019) .......................................................................................... 12

Letter from Sen. Charles E. Schumer to Sen. Mitch McConnell (Dec. 15, 2019)......................... 4

Nicholas Fandos & Sheryl Gay Stolberg, *Bolton and Trump Met Privately Over Withheld Aid, White House Official Testified*, N.Y. Times (Nov. 26, 2019)..................................................... 3

U.S. Government Accountability Office, *Office of Management and Budget—Withholding of Ukraine Security Assistance, B-331564* (Jan. 16, 2020)......................................................... 18

White House Office of the Press Secretary, *Memorandum for the Heads of Executive Departments and Agencies* (Jan. 21, 2009) .............................................................................22

One week ago, the Government Accounting Office ("GAO") declared that the administration broke the law when it withheld military aid to Ukraine. *See, e.g.*, Emily Cochrane, Eric Lipton & Chris Cameron, *G.A.O. Report Says Trump Administration Broke Law in Withholding Ukraine Aid*, N.Y. Times (Jan. 17, 2020), https://www.nytimes.com/2020/01/16/us/politics/gao-trump-ukraine.html. The documents at issue in this action, which is brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, directly relate to that wrongdoing. If FOIA stands for anything, it is that the statute should not be misused to cover up illegal conduct.

Specifically, plaintiffs The New York Times Company and Charlie Savage (together, "The Times") seek emails between two government officials communicating about the withholding of the military aid in order to pressure Ukraine into investigating presidential candidate and former Vice President Joe Biden—allegations at the heart of the GAO report and the ongoing impeachment of the President. As the Senate impeachment trial begins and, beyond that, as the 2020 election approaches, the public interest in these documents—which may provide a fuller picture of President Trump's knowledge of, and involvement in, that withholding—is paramount. Defendant Office of Management and Budget ("OMB") has withheld in full *all* responsive records, finding that not a word from any document can be disclosed to the American public. That blanket withholding finds no support in FOIA.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      The Subject of the FOIA Request

The Times's FOIA request seeks email communications from May to September 2019 between Robert Blair and Michael Duffey—two players who have become central in the impeachment proceedings. During testimony to the House Intelligence Committee on November 16, 2019, OMB's Deputy Associate Director for National Security Programs, Mark Sandy, referred to an email exchange between Duffey and Blair from approximately July 17 or 18, 2019, in which Duffey asked Blair about the reason for the hold on Ukraine security assistance. *See* Deposition of Mark Sandy, House of Representatives Permanent Select Committee on Intelligence, Committee on Oversight and Reform, and Committee on Foreign Affairs (Nov. 16, 2019), https://www.nytimes.com/interactive/2019/11/26/us/politics/mark-sandy-testimony-impeachment.html.

Although the specific email communications at issue remain hidden from public view, the public has come to learn more about Duffey and Blair in recent months. Michael Duffey has served since May 2019 as Associate Director for National Security Programs at the Office of Management and Budget, in which capacity he oversees government funding for defense, intelligence, international affairs and veterans' programs. *See* House Permanent Select Committee on Intelligence, The Trump-Ukraine Impeachment Inquiry Report, at 292 (Dec. 2019), https://intelligence.house.gov/uploadedfiles/the_trump-ukraine_impeachment_inquiry_report.pdf. As *The New York Times* and other outlets have reported, Duffey signed paperwork enforcing the hold on aid appropriated by Congress to Ukraine, then was in charge of eventually releasing the $391 million in weapons and security

assistance. *See, e.g.*, Nicholas Fandos & Sheryl Gay Stolberg, *Bolton and Trump Met Privately Over Withheld Aid, White House Official Testified*, N.Y. Times (Nov. 26, 2019), https://www.nytimes.com/2019/11/16/us/politics/impeachment-trump.html; Charlie Savage & Eric Lipton, *White House Withholds 20 Emails Between Two Trump Aides on Ukraine Aid*, N.Y. Times (Jan. 3. 2020), https://www.nytimes.com/2020/01/03/us/politics/trump-ukraine-military-aid.html.

Robert Blair is senior adviser to the acting White House Chief of Staff, Mick Mulvaney, for national security issues. Before moving over to the White House in January 2019, Blair served under Mulvaney as associate director for national security programs at OMB. In his current role, Blair is among the White House personnel in the Executive Office of the President, though he is not a member of President Trump's Cabinet, nor is he among the approximately 25 other individuals who are generally considered to be the "senior White House officials." *See, e.g.*, Ballotpedia, Donald Trump White House Staff, https://ballotpedia.org/Donald_Trump_White_House_staff. Blair, who was on the line during President Trump's July 25, 2019 phone call with Ukrainian President Volodymyr Zelensky, during which Trump asked Zelensky to investigate former Vice President Joe Biden, refused to testify during impeachment proceedings in the House of Representatives.

Senator Chuck Schumer recently cited Blair and Duffey as two of four critical witnesses, alongside Acting White House Chief of Staff Mick Mulvaney and former National Security Advisor John Bolton, whose testimony ought to be heard as part of the Senate trial—witnesses "with direct knowledge of Administration decisions regarding the delay in security assistance funds to the government of Ukraine and the requests for certain investigations to be announced

3

by the government of Ukraine." *See* Letter from Sen. Charles E. Schumer to Sen. Mitch

McConnell (Dec. 15, 2019), https://www.documentcloud.org/documents/6596431-2019-12-15-

Schumer-Letter.html.

## II.     The FOIA Request and the Instant Litigation

The Times submitted its FOIA request to OMB on September 26, 2019. *See* Declaration

of David E. McCraw in Support of Plaintiffs' Motion for Summary Judgment ("McCraw Decl."),

Ex. A. On September 27, 2019, OMB acknowledged receipt of the request and assigned it FOIA

number 19-486. *See* McCraw Decl., Ex. B. On October 29, 2019, The Times appealed the delay

as a constructive denial of its request. *See* McCraw Decl., Ex. C; 5 U.S.C. § 552(a)(6)(C)(i);

*Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a FOIA requester

may sue if an agency fails to comply with the statutory deadlines).

On November 26, 2019, The Times filed its complaint and moved for a preliminary

injunction, seeking to enjoin the agency from withholding documents responsive to The Times's

FOIA request and citing the urgency associated with the impeachment process then-underway in

the House of Representatives. *See* ECF Nos. 1, 9–10. On December 9, 2019, this Court held a

scheduling teleconference and ordered the Government to determine the number of documents

responsive to The Times's request and to provide The Times with that information by December

12, 2019. *See* ECF No. 17. On December 12, 2019, OMB informed The Times that an initial

electronic search yielded 219 responsive documents, and noted that "[a] further manual review

for a final responsiveness determination will likely reduce this count." McCraw Decl., Ex. D.

OMB also indicated that some number of responsive documents were "wholly unrelated to the

Ukraine matter" and asked whether The Times would agree to exclude such documents to

expedite the completion of production. *See id.* The Times agreed that non-Ukraine-related documents could be put aside and excluded from the expedited processing schedule. McCraw Decl., Ex. E.

In light of the small universe of responsive documents, The Times pressed OMB to begin producing documents, at least as part of a rolling production, by the end of 2019. OMB maintained, however, that "[e]ven the loss of two business days for processing" was "very critical" and that "OMB cannot figure out a way to make a December 31 production feasible." McCraw Decl., ¶ 8. Accordingly, the parties ultimately agreed in a December 13, 2019 Joint Status Report that OMB would complete production by 5:00 p.m. on January 3, 2020, and this Court so ordered on December 16, 2019. *See* ECF No. 18. The Court also directed that consideration of The Times's motion for a preliminary injunction would be consolidated with the Court's review of the merits of the case.

At 4:55 p.m. on January 3, 2020, OMB sent a short "interim response" letter, in lieu of producing a single document even in redacted form. *See* McCraw Decl., Ex. F. The letter stated:

> In accordance with the Joint Status Report filed in this matter dated December 13, 2019, OMB conducted a search for communications between Michael Duffey and Robert Blair from May 1 to October 9, 2019, and identified a total of 20 responsive documents, consisting of 40 pages, excluding those not related to the Ukraine-matter [sic]. All 20 documents are being withheld in full pursuant to FOIA Exemption 5, 5 U.S.C § 552(b)(5). Exemption 5 protects both deliberative and presidential communications, the disclosure of which would inhibit the frank and candid exchange of views that is necessary for effective government decision-making.

*Id.*

The Times responded on January 3, 2020, noting that it would seek "expedited motion practice given that the documents are time-sensitive with the impeachment proceedings likely to move ahead soon." McCraw Decl., ¶ 10. On January 13, 2020, this Court ordered The Times to

file by January 22, 2020 its motion for summary judgment and its stipulation to the dismissal of

the FOIA request as to non-Ukraine-related material. *See* January 13, 2020 Minute Order, *New

York Times et al. v. OMB*, No. 19-cv-03562-ABJ.

## JURISDICTION

Jurisdiction is proper in this district under 5 U.S.C. § 552(a)(4)(B), which provides:

On complaint, the district court of the United States . . . in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

## ARGUMENT

Designed "to pierce the veil of administrative secrecy and to open agency action to the

light of public scrutiny," FOIA reflects "a general philosophy of full agency disclosure unless

information is exempted under clearly delineated statutory language." *Dep't of Air Force v.

Rose*, 425 U.S. 352, 360–61 (1976). That "strong presumption in favor of disclosure places the

burden on the agency to justify the withholding of any requested documents." *Dep't of State v.

Ray*, 502 U.S. 164, 173 (1991); *see also Chiquita Brands Int'l, Inc. v. SEC*, 805 F.3d 289, 294

(D.C. Cir. 2015) (noting that the burden of proof is on the party opposing disclosure). "[I]n

keeping with FOIA's presumption in favor of disclosure," FOIA allows agencies to withhold

only documents falling under the nine statutory exemptions. *Pub. Citizen, Inc. v. OMB*, 598 F.3d

865, 869 (D.C. Cir. 2009). Those exemptions "must be narrowly construed." *Milner v. Dep't of

the Navy*, 562 U.S. 562, 565 (2011).

The sole exemption at issue here is Exemption 5, which permits an agency to withhold

"inter-agency or intra-agency memorandums or letters that would not be available by law to a

party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption

"incorporates the traditional privileges that the Government could assert in civil litigation against a private litigant," including the deliberative process privilege and the presidential communications privilege. *Loving v. DOD*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006)). OMB justifies the blanket withholding here as both deliberative material and material covered by the presidential communication privilege.

The Government bears the burden of justifying nondisclosure. *See* 5 U.S.C. § 552(a)(4)(B), (b). "[W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007). Categorical descriptions of the redacted material, coupled with conclusory statements about the "anticipated consequences of disclosure," are "clearly inadequate" to satisfy the Government's burden of proof. *Id.* (citing *Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)). "Exemption 5 is to be construed as narrowly as consistent with efficient Government operation." *Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434 (1992).

The Times will address fully OMB's basis for the blanket withholding once OMB has filed its opening memorandum of law in this action.[1] But, even on the current record, it is inconceivable that Exemption 5 can be stretched so far as to permit withholding of every fact and every other statement in the emails. Blanket assertions of privilege are disfavored. *See, e.g.,* *Judge Rotenberg Educ. Ctr., Inc. v. U.S. FDA*, 376 F. Supp. 3d 47, 65–67 (D.D.C. 2019)

---

[1] As The Times does not have the benefit of a full statement of the Government's position, The Times reserves the right to raise additional grounds for summary judgment in its reply brief in

(holding that the agency failed to tie withholdings to specific, subsidiary agency decisions);

*Kwoka v. IRS*, 2018 U.S. Dist. LEXIS 167547, at *8 (D.D.C. Sept. 28, 2018) (holding that the

government was "not entitled to a blanket invocation" of FOIA exemptions); *Cuban v. SEC*, 744

F. Supp. 2d 60, 79 (D.D.C. 2010) ("A blanket assertion of the privilege will not suffice."); *The*

*Wilderness Soc'y v. U.S. Dep't of the Interior*, 344 F. Supp. 2d 1, 19 (D.D.C. 2004) (rejecting a

blanket justification for withholding). It is also beyond dispute that an agency has a duty to

segregate exempt material from non-exempt material and to employ redaction to permit the

disclosure of the non-exempt material. *See, e.g.*, *Isley v. Exec. Office for the U.S. Attorneys*, 1999

U.S. App. LEXIS 29721, at *20 (D.C. Cir. Oct. 21, 1999) ("[A]ny reasonably segregable portion

of a record shall be provided . . . after deletion of the portions which are exempt.") (quoting 5

U.S.C. § 552(b)); *Morley*, 508 F.3d at 1123; *Krikorian v. Dep't of State*, 984 F.2d 461, 467 (D.C.

Cir. 1993).

## I.      The Scope of the Presidential Communications Privilege Is Limited

Exemption 5 of the Freedom of Information Act has been construed to incorporate a

narrowly defined presidential communications privilege. *See Judicial Watch, Inc. v. DOJ*, 365

F.3d 1108, 1113 (D.C. Cir. 2004). The "privilege is rooted in the President's need for

confidentiality in the communications of his office, in order to effectively and faithfully carry out

his Article II duties and to protect the effectiveness of the executive decision-making process."

*Id.* at 1115. The privilege does not reach every communication that passes through the White

House. Instead, it embodies two important limiting principles. First, it applies only to documents

"directly involving" the President, or documents "'solicited and received' by the President or his

opposition to the Government's anticipated motion for summary judgment and in further support

immediate White House advisers." *Loving*, 550 F.3d at 37. Second, in cases such as this involving advisers, those advisers must have "broad and significant responsibility for investigating and formulating the advice to be given the President." *Id.* (quoting *Judicial Watch*, 365 F.3d at 1114).

The D.C. Circuit and other courts have warned against "the dangers of expanding [the privilege] too far." *Judicial Watch*, 365 F.3d at 1114–15; *see id.* at 1116 ("[T]he presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected."); *id.* at 1122 (noting that "the courts must be ever mindful of the dangers of cloaking governmental operations in secrecy"); *Ctr. for Biological Diversity v. OMB*, 2009 U.S. Dist. LEXIS 38169, at *22 (N.D. Cal. 2009) ("[r]emind[ing] the OMB that the presidential communications privilege is to be narrowly construed"). And this Court has been clear about the narrowness of the privilege: It can be invoked "only if there is an actual advisory relationship between the President and the staffer as to that specific document." *Ctr. for Effective Gov't v. U.S. Dep't of State*, 7 F. Supp. 3d 16, 26–27, 29 (D.D.C. 2013).

Because the privilege is "specific to the President," there is "a hierarchy of presidential advisers such that the demands of the privilege become more attenuated the further away the advisers are from the President operationally." *Judicial Watch*, 365 F.3d at 1114–15. Thus, the privilege extends a certain degree "down the chain of command," to the President's "immediate White House advisers only." *Id.* at 1115. It does not cover "every person who plays a role in the development of presidential advice, no matter how remote and removed from the President." *Id.* at 1116.

---

of The Times's motion for summary judgment.

In deciding whether the presidential communications privilege applies to a given document, courts look to "whether application of the privilege is necessary to protect the confidentiality of communications as between the President and his advisers." *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, 330 F. Supp. 3d 293, 308 (D.D.C. 2018) (quoting *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 25). The application of the privilege turns on "the degree and nature of the President's involvement in decisionmaking." *Prop. of the People, Inc. v. OMB*, 330 F. Supp. 3d 373, 389 (D.D.C. 2018); *see also, e.g.*, *Samahon v. U.S. DOJ*, 2015 U.S. Dist. LEXIS 23813, at *34 (E.D. Pa. Feb. 27, 2015) (suggesting that the communications must be "'intimately connected' to presidential decisionmaking" for the privilege to apply). The privilege "should never serve as a means of shielding information regarding governmental operations that do not call ultimately for direct decisionmaking by the President." *Am. Ctr. for Law & Justice*, 330 F. Supp. 3d at 308 (quoting *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)).

That body of law presents an insurmountable obstacle to OMB's attempt to justify its blanket withholding here. Duffey's communications plainly are not covered by the presidential communications privilege, which does not apply to members of the Executive Branch who work outside of the White House. *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 27 n.10. In another FOIA case in which OMB asserted the presidential communications privilege, *Center for Biological Diversity v. OMB*, the court held that the privilege did not apply to intra-OMB discussions. *Ctr. for Biological Diversity*, 2009 U.S. Dist. LEXIS 38169, at *23. There, the government had argued that approximately 90 documents were exempt under the presidential communications privilege because they related to a meeting with the President. But the district court looked behind that blanket assertion, pointing out that many of the documents at issue did not appear to have been prepared specifically for the meeting, and determining that documents that merely

10

"'relate[d] to' a presentation for the president" were not exempt. *Id.* at *23–24. "[E]xtension of

the presidential privilege to the OMB," the court cautioned, "is unprecedented and unwarranted."

*Id.* at *22. Thus, even if Duffey's communications "relate to" President Trump's directive to

withhold aid, they are not protected by the presidential communications privilege.

 Blair's status in a job remote from the President similarly fails to trigger the privilege. It

is manifestly insufficient for the Government to point out that Blair's title includes the phrase

"assistant to the president." An "assistant" is not a close or immediate adviser. The D.C. Circuit

"has unambiguously rejected an approach that would classify a broad assortment of Executive

Branch officials" as "immediate White House advisers." *Prop. of the People, Inc.*, 330 F. Supp.

3d at 387. As the D.C. Circuit noted in *Judicial Watch*, "[e]xtension of the presidential

communications" to even the Deputy Attorney General, "with the attendant implication for

expansion to other Cabinet officers and their staffs, would . . . 'pose a significant risk of

expanding to a large swath of the executive branch a privilege that is bottomed on a recognition

of the unique role of the President." *Judicial Watch*, 365 F.3d at 1121.

 If the Deputy Attorney General is not an immediate adviser to the President, nor is an

adviser to the acting White House chief of staff; both are "at least twice removed from the

President." *Id.* at 1117. There is no indication that Blair's role, as it pertains to the

communications at issue, involved making recommendations to the President about policy. *Cf.*

*Bishopp v. District of Columbia*, 1984 U.S. Dist. LEXIS 18533, at *4 (D.D.C. Mar. 16, 1984)

(suggesting that an immediate adviser must have a policymaking role); *In re Sealed Case*, 121

F.3d at 752 (suggesting that an immediate adviser must have "broad and significant

responsibility" for formulating advice to the President). Indeed, Blair's distance from the

President in the hierarchy of presidential advisers is evidenced by the fact that Blair's

11

appointment as "special representative for international telecommunications policy" in December 2019, "under White House economic adviser Larry Kudlow," was uniformly considered a promotion. *See, e.g.*, Kyle Cheney, *Trump Elevates Mulvaney Aide Weeks After He Defied Impeachment Subpoena*, Politico (Dec. 23, 2019), https://www.politico.com/news/2019/12/23/trum-robert-blair-mulvaney-089648. In short, Blair is sufficiently "down the chain of command" such that the presidential privilege—which is "specific to the President"—does not apply. *Judicial Watch*, 365 F.3d at 1114–15.

Moreover, for "'dual-hat' advisers like Blair who work within the White House but perform other functions within the Executive Branch," the presidential communications privilege applies only if the government proves that the communications at issue "occurred in the course of advising the President." *Id.* at 1120–21. Again, there must be an "actual advisory relationship between the President and [Blair] as to [each] specific" document withheld. *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 26–27. The Government bears the burden of establishing the existence of such an advisory relationship, for each of the 20 emails at issue. There is no reason to believe that the communications at issue involve the formulation of advice for the President, or that disclosure of emails between Blair and Duffey would in any way undermine "the confidentiality of communications as between the President and his advisers." *Am. Ctr. for Law & Justice*, 330 F. Supp. 3d at 308. Indeed, on the face of the request, there is nothing that indicates that the President was directly implicated in any way in the communications between a former OMB staffer, Robert Blair, and his successor, Michael Duffey, so as to justify the application of the presidential privilege.

## II.       The Scope of the Deliberative Process Privilege Is Limited

The deliberative process privilege—"the most used privilege and the source of the most concern regarding overuse," FOIA Oversight and Implementation Act of 2015, H.R. Rep. No. 114–391, at 10—also fails to justify the Government's blanket withholding. The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). In order to fall under the scope of the privilege, a document must be both predecisional and deliberative. *See, e.g.*, *In re Sealed Case*, 121 F.3d at 737; *Am. Ctr. for Law & Justice*, 330 F. Supp. 3d at 301. Predecisional material is material prepared before the adoption of an agency policy in order "to assist an agency decision maker in arriving at his decision, rather than to support a decision already made." *Petroleum Info. Corp.*, 976 F.2d at 1434. Deliberative material is material that "reflects the give-and-take of the consultative process," *id.*; *accord Pub. Citizen, Inc. v. OMB*, 569 F.3d 434, 442 (D.C. Cir. 2009), and that "is intended to facilitate or assist development of the agency's final position on the relevant issue," *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 463 (D.C. Cir. 2014). "The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made." *In re Sealed Case*, 121 F.3d at 737. Those principles undergird a particularly important limitation on the privilege: It does not apply to purely factual material. *See Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 256 (D.C. Cir. 1977) (citing *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 88 (1973)).

The Times's request seeks email communications, not an advisory memorandum or formal policy recommendation. It is simply implausible that all of the material withheld reflects the consultative process and was "intended to facilitate or assist development of the agency's final position." *Nat'l Sec. Archive*, 752 F.3d at 463.

But there is a more fundamental problem with OMB's case. The decision to hold the aid to Ukraine was already made by June 19, 2019. *See* Eric Lipton, Maggie Haberman & Mark Mazzetti, *Behind the Ukraine Aid Freeze: 84 Days of Conflict and Confusion*, N.Y. Times (Jan. 16, 2020), https://www.nytimes.com/2019/12/29/us/politics/trump-ukraine-military-aid.html. Documents simply "stat[ing] or explain[ing]" that decision are not protected. *See In re Sealed Case*, 121 F.3d at 737. Put simply, the documents are post-decisional and therefore fall outside the exemption. They plainly "are not advice to a superior, nor are they suggested dispositions of a case," *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980).

Finally, OMB's failure to disclose the obvious factual material in the emails—header information about the date and time of emails, for instance—shows that OMB is overreaching with its blanket withholding. *See, e.g.*, *Envtl. Prot. Agency v. Mink*, 410 U.S. 73, 88–91 (1973) ("Exemption 5 . . . requires different treatment for materials reflecting deliberative or policymaking processes," which are exempt from disclosure, and "purely factual, investigative matters," which are not exempt); *Am. Ctr. for Law & Justice*, 330 F. Supp. 3d at 306 ("[F]actual material severable from policy advice is not typically covered by the deliberative process privilege."). The same disclosure rule would apply to the facts contained within any email—for instance, who attended a meeting, when and where the meeting took place, the amount of aid money involved, and similar data.

14

III.     **Any Exemption 5 Privilege That May Otherwise Apply Cannot Be Used to Hide Government Misconduct**

The blanket withholding here cannot be stripped of its particular historic context. An independent government watchdog has concluded that wrongdoing occurred. Both the presidential communications privilege and the deliberative process privilege yield to the public interest in disclosing government wrongdoing.

The origins of the presidential communications privilege lie in *United States v. Nixon* and *Nixon v. Administrator of General Services*, in which the Supreme Court recognized "a presumptive privilege for Presidential communications" that is "limited to communications in performance of a President's responsibilities, of his office, and made in the process of shaping policies and making decisions," *United States v. Nixon*, 418 U.S. 683, 708 (1974) ("*Nixon I*"); *Nixon v. Administrator of General Services*, 433 U.S. 425, 449 (1977) ("*Nixon II*") (alterations omitted). The Supreme Court made plain that the "privilege of confidentiality of Presidential communications in performance of the President's responsibilities" is not an "absolute, unqualified privilege." *Nixon I*, 418 U.S. at 707, 712. Instead, the presidential privilege is a qualified one that yields to the public interest in disclosure, when disclosure could shed light, for example, on potentially criminal conduct by the President. *Id.* at 706; *see also, e.g.*, *Lardner v. U.S. DOJ*, 2005 U.S. Dist. LEXIS 5465, at *44 (D.D.C. Mar. 31, 2005) (explaining that courts look to the "public interests at stake in determining whether the [presidential communications] privilege should yield in a particular case").

So too with the deliberative process privilege. "Under the government-misconduct exception to the deliberative-process privilege, 'where there is reason to believe the documents may shed light on government misconduct, the privilege is routinely denied, on the grounds that

15

shielding internal government deliberations in this context does not serve the public's interest in honest, effective government.'" *Nat'l Whistleblower Ctr. v. HHS*, 903 F. Supp. 2d 59, 66 (D.D.C. 2012) (citing *In re Sealed Case*, 121 F.3d at 738). As numerous courts in this District have indicated, that government-misconduct exception can "overcome the deliberative-process privilege in a FOIA suit." *Id.* at 66–67; *see also, e.g.*, *Reinhard v. Dep't of Homeland Sec.*, 2019 U.S. Dist. LEXIS 115282, at *31–32 (D.D.C. July 11, 2019) (indicating that a government-misconduct exemption exists and could "justify overriding" the deliberative process privilege in certain circumstances in the FOIA context); *Bartko v. U.S. DOJ*, 2018 U.S. Dist. LEXIS 163700, at *15 (D.D.C. Sept. 25, 2018) (recognizing that the government misconduct exception applies "in cases of extreme government wrongdoing"); *Wisdom v. United States*, 266 F. Supp. 3d 93, 107 (D.D.C. 2017) (suggesting that evidence of severe government misconduct could overcome the deliberative-process privilege); *Neighborhood Assistance Corp. of Am. v. U.S. Dep't of Hous. & Urban Dev.*, 19 F. Supp. 3d 1, 14 (D.D.C. 2013) (holding that the deliberative process privilege can be overcome by severe governmental misconduct); *ICM Registry, LLC v. U.S. Dep't of Commerce*, 538 F. Supp. 2d 130, 131–34 (D.D.C. 2012) (suggesting that the deliberative process privilege "disappears altogether" when "nefarious" government conduct or "political abuse" occurred); *Judicial Watch of Fla., Inc. v. U.S. Dep't of Justice*, 102 F. Supp. 3d 6, 15 (D.D.C. 2000) (suggesting that the government-misconduct exemption applies in the FOIA context upon a "showing of improper behavior"); *Tax Reform Research Grp. v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976) (rejecting the government's assertion of the deliberative process privilege and ordering disclosure of documents under FOIA where there was evidence of agency wrongdoing and the documents "simply cannot be construed as being part of any proper governmental process").

The Times recognizes that this Court has previously expressed doubts as to whether a government misconduct exception could abrogate the deliberative process privilege in a FOIA case. *See Judicial Watch, Inc. v. U.S. Dep't of State*, 241 F. Supp. 3d 174, 182–83 (D.D.C. 2017) (Berman Jackson, J.), *amended on reconsideration on other grounds*, 282 F. Supp. 3d 338; *see also Wright v. Admin. for Children & Families*, 2016 U.S. Dist. LEXIS 140314, at *36 (D.D.C. Oct. 11, 2016) (concluding that "the government misconduct exception recognized in *In re Sealed Case* cannot overcome an otherwise valid withholding pursuant to Exemption 5"). But the Times respectfully points to the weight of authority—including more recent decisions— recognizing that a government misconduct exception applies with equal force in the FOIA and civil discovery contexts, *see Reinhard*, 2019 U.S. Dist. LEXIS 115282, at *31–32; *Bartko*, 2018 U.S. Dist. LEXIS 163700, at *15, or, at a minimum, assuming that it might, *see, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of State*, 285 F. Supp. 3d 249, 253–55 (D.D.C. 2018); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 2017 U.S. Dist. LEXIS 215144, at *4–5 (D.D.C. Aug. 21, 2017).

The application of a government misconduct exception to FOIA litigation is entirely consistent with *In re Sealed Case*. In *In re Sealed Case*, the D.C. Circuit noted that "the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure," and therefore the privilege cannot be overcome by a showing of need in the FOIA context, unlike in the grand jury subpoena context. *In re Sealed Case*, 121 F.3d at 737 & n.5. But the government-misconduct exception is not based on weighing a plaintiff's showing of need against the privilege. Rather, it is an exception to the applicability of the privilege at all: "[W]hen there is any reason to believe government misconduct occurred," the deliberative process privilege "disappears altogether." *Id.* at 746; *cf. Enviro Tech Int'l, Inc. v.*

17

*U.S. EPA*, 371 F.3d 370 (7th Cir. 2004) ("We may . . . assume [in a FOIA case] . . . that internal discussions about a course of agency action that would be nefarious, if not illegal, . . . would not be protected by the deliberative process privilege.") (citing *Tax Reform Research Grp. v. IRS*, 419 F. Supp. 415, 426 (D.D.C. 1976)). Where, as here, there is evidence of "governmental misconduct . . . severe enough to qualify as nefarious or extreme government wrongdoing," the privilege "disappears." *Neighborhood Assistance Corp. of Am.*, 19 F. Supp. 3d at 14; *In re Sealed Case*, 121 F.3d at 746.

Accordingly, even if the deliberative process privilege applied to some statements within the emails, disclosure is still warranted. There is ample "reason to believe" the emails at issue "may shed light on government misconduct." *In re Sealed Case*, 121 F.3d at 737. The emails relate to OMB's hold on congressionally authorized military aid to Ukraine, which was found to be an abuse of OMB's apportionment authority and an illegal deferral under the Impoundment Control Act, 2 U.S.C. § 686. The GAO's report underscores that disclosure is essential. U.S. Government Accountability Office, *Office of Management and Budget—Withholding of Ukraine Security Assistance, B-331564* (Jan. 16, 2020), https://www.gao.gov/mobile/products/B-331564. As the GAO found, OMB's deferral of funds was done for policy reasons, which are not a permissible basis for deferral under the statute.

The alleged misconduct goes beyond an agency's technical violations of the Impoundment Control Act, however. Testimony from the House impeachment proceedings suggest that the aid freeze was part of a concerted campaign orchestrated by President Trump to pressure Ukraine into investigating his political rival, former Vice President Biden—that is, an unlawful quid pro quo in which the President used governmental power to obtain a personal favor. The Government cannot shield from public view emails that might shed light on activity

that has already been deemed unlawful and has been tied to an impeachable offense. The public's paramount need for information related to the illegal deferral of Ukraine aid vitiates any privilege that may otherwise apply.

## IV.     Any Exemption 5 Privilege That May Otherwise Apply Has Been Waived

The presidential communications privilege and deliberative process privilege are extinguished through official acknowledgement of the communications at issue. Courts in this Circuit and elsewhere have routinely held that the privileges are waived if the government has previously "officially acknowledged" the information, *see ACLU v. DOD*, 628 F.3d 612, 620 (D.C. Cir. 2011); *ACLU v. CIA*, 710 F.3d 422, 426–27 (D.C. Cir. 2013), or expressly adopted it into a final agency decision, *see Samahon*, 2015 U.S. Dist. LEXIS 23813, at *39–42. "Voluntary disclosures of all or part of a document may waive an otherwise valid FOIA exemption." *N.Y. Times Co. v. U.S. DOJ*, 752 F.3d 123, 136–37 (2d Cir. 2014); *accord, e.g.*, *100Reporters LLC v. U.S. DOJ*, 248 F. Supp. 3d 115, 155 (D.D.C. 2017).

Official acknowledgement has happened here. The decision to hold the aid to Ukraine before eventually releasing it was expressly adopted as the law or policy of the administration. Moreover, the substance of the communications has been officially acknowledged by government officials and "widely discussed . . . in the media." *Ctr. for Effective Gov't*, 7 F. Supp. 3d at 25. "Although . . . disclosure of portions of a document subject to the presidential communications privilege does not waive the privilege as to the entire document, the widely publicized nature of [the document] is important in considering the confidentiality interests implicated" by disclosure under FOIA. *Id*.

For example, Mark Sandy's widely-publicized testimony before the House Intelligence Agency referred specifically to one of the emails at issue, undercutting any purported confidentiality. As has been widely reported, Blair initially contacted OMB to inform the agency that President Trump wanted the aid withheld, and Sandy, after first learning about President Trump's request, asked Duffey why the hold had been imposed. *See* Lipton, Haberman & Mazzetti, *Behind the Ukraine Aid Freeze*, *supra*. And recently revealed documents confirm that there was "[c]lear direction from POTUS" to continue to withhold aid. Savage & Lipton, *White House Withholds 20 Emails*, *supra*. Insofar as the communications at issue between Duffey and Blair relate to President Trump's instruction to withhold aid, that instruction has been openly acknowledged and widely publicized. Neither the presidential communications privilege nor the deliberative process privilege survives such public discussion and incorporation into final policy.

## V.     The Government Cannot Satisfy Its Additional Burden Under The FOIA Improvement Act

The 2016 FOIA Improvement Act places an additional burden on the Government, to show that disclosure of the withheld material would reasonably harm the interests protected by Exemption 5. *See* 5 U.S.C. § 552(a)(8)(A).[2] Under the statute, "[a] n agency shall . . . withhold

---

[2] Congress enacted the FOIA Improvement Act to combat agencies' overuse of FOIA exemptions and of Exemption 5 in particular. *See, e.g.*, 114 Cong. Rec. S1496 (Mar. 15, 2016) (Statement of Sen. Leahy) (noting the need to "reduce the perfunctory withholding of documents through the overuse of FOIA's exemptions"); Staff Report, U.S. House of Rep., Comm. On Oversight and Gov't Reform, *FOIA Is Broken: A Report* (Jan. 2016) (noting that agencies "overuse and misapply exemptions, withholding information and records rightfully owed to FOIA requesters"); 114 Cong. Rec. S1494, at 3 (Mar. 15, 2016) (Statement of Sen. Grassley) (pointing to a "growing and troubling trend towards relying on these discretionary exemptions to withhold large swaths of Government information, even though no harm would result from disclosure," and noting that federal agencies used Exemption 5 41% more in 2012 than in the previous year); FOIA Oversight and Implementation Act of 2015, H.R. Rep. No. 114-391, at 10

information under this section only if [ ] (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption described in [5 U.S.C. § 552(b)]; or (II) disclosure is prohibited by law." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 73 (D.D.C. 2018) (quoting 5 U.S.C. § 552(a)(8)(A)). As this Court recently observed, the foreseeable harm standard's "text and purpose . . . both support a heightened standard for an agency's withholdings." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019).

To satisfy this "meaningful and independent burden," "the government must do more than perfunctorily state that disclosure of all of the withheld information—regardless of category or substance—would jeopardize the free exchange of information." *Judicial Watch, Inc. v. U.S. DOJ*, 2019 U.S. Dist. LEXIS 163473, at *11 (D.D.C. Sept. 24, 2019); *Rosenberg*, 342 F. Supp. 3d at 79; *see also Judicial Watch*, 375 F. Supp. 3d at 100–01 (holding that "general," "boiler plate," and "speculative" statements about the "chilling effect" that would result from disclosure were insufficient). Instead, the government must provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 2019 U.S. Dist. LEXIS 223077, at *26 (D.D.C. Dec. 31, 2019); *Judicial Watch*, 2019 U.S. Dist. LEXIS 163473, at *13–14. Thus, even if a record or portion thereof otherwise falls within the scope of Exemption 5, the agency cannot withhold it absent specific, meaningful explanation of how disclosure "would harm the agency's deliberative process." *Rosenberg*, 342 F. Supp. 3d at 78.

("The deliberative process privilege is the most used privilege and the source of the most concern regarding overuse. . . . [It] has become the legal vehicle by which agencies continue to withhold information about government operations.").

Covering up government misconduct is not an exemption-protected interest under 5 U.S.C. § 552(a)(8)(A). *See supra* Part III. It does not serve the interest in candid internal deliberation to withhold materials that relate to how an unlawful act was executed: "The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears. Nondisclosure should never be based on an effort to protect the personal interests of Government officials at the expense of those they are supposed to serve." White House Office of the Press Secretary, *Memorandum for the Heads of Executive Departments and Agencies* (Jan. 21, 2009), https://nsarchive2.gwu.edu//news/20090121/2009_FOIA_memo.pdf.

Moreover, given how much information has emerged about President Trump's involvement in the decision to withhold aid, and about the role OMB played in enacting that deferral, *see supra* Part IV, any harm to the deliberative process or the presidential communications privilege as a result of those revelations has already occurred. "The question is not whether disclosure *could* chill speech, but rather if it is reasonably foreseeable that it *will* chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld." *Judicial Watch*, 375 F. Supp. 3d at 100–01 (emphasis added). It is not reasonably foreseeable that disclosure of the 20 emails at issue would cause any additional harm to the exemption-protected interest in frank and honest deliberations, beyond any harm that may have already occurred as a result of extensive congressional testimony, whistleblowing, and disclosure of related documents.

22

## VI.    At a Minimum, *In Camera* Review Is Warranted

Under FOIA, all reasonably segregable non-exempt information must be disclosed. *See* 5 U.S.C. § 552(b)(9); *see also, e.g.*, *Oglesby*, 79 F.3d at 1178. "[A]n agency cannot exempt an entire document from disclosure simply because part of the document meets the requirements of an exemption." *Elec. Privacy Info. Ctr. v. Transp. Sec. Admin.*, 2004 U.S. Dist. LEXIS 29433, at *26 (D.D.C. Aug. 2, 2004). It is simply not plausible that all of the responsive emails, including the To/From fields and time stamp of each one, are wholly exempt from disclosure.

In light of the Government's apparent reluctance to conduct a proper segregability analysis and disclose non-exempt information, *in camera* review is warranted. *See* 5 U.S.C. § 552(a)(4)(B) (providing that the court "may examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section"). *In camera* review is particularly appropriate in circumstances such as these, where the volume of disputed documents is small— just 20 documents totaling 40 pages. *See, e.g.*, *Neuman v. United States*, 70 F. Supp. 3d 416, 425 & n.8 (D.D.C. 2014) (ordering *in camera* review based on the small number of documents—in that case, approximately 73 pages); *Hall v. CIA*, 881 F. Supp. 2d 38, 74 (D.D.C. 2012) (noting that "*in camera* inspection may be particularly appropriate . . . when the number of withheld documents is relatively small").

Finally, this is the exceptional circumstance that warrants the Court's exercise of its discretion to review withheld materials *in camera*, if the Court thinks any privilege may apply. The public interest in disclosure could not be greater: With the 2020 presidential election on the horizon and a historic Senate impeachment trial just beginning, the American public has an

urgent right to understand how the decision to withhold aid to Ukraine was made, executed, and understood within the Executive Branch.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully ask this Court to (i) declare that the materials responsive to The Times's request are public under 5 U.S.C. § 552 and must be disclosed; (ii) award The Times the costs of this proceeding, including reasonable attorneys' fees, as expressly permitted by 5 U.S.C. § 552(a)(4)(E); and (iii) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ David E. McCraw
David E. McCraw
Alexandra Perloff-Giles
Legal Department
The New York Times Company
620 8th Avenue
New York, NY 10018
Phone: (212) 556-4031
Fax: (212) 556-4634
Email: mccraw@nytimes.com

*Counsel for Plaintiffs*