UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NEW YORK TIMES COMPANY, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 19-3562 (ABJ) ) |
| OFFICE OF MANAGEMENT AND BUDGET, | ) ) ) ) |
| Defendant. | ) ) |

## ORDER

In connection with the first set of impeachment proceedings involving President Donald J. Trump, related to the hold he placed on financial assistance to Ukraine, the New York Times and its reporter Charlie Savage submitted a Freedom of Information Act ("FOIA") request to the Office of Management and Budget ("OMB"). Compl. [Dkt. # 1]. It called for

> all email correspondence between Michael Duffey, OMB's Principal Associate Director for National Security Programs, and Robert Blair, an Assistant to the President and Senior Advisor to the White House Chief of Staff, from May 1 to the present.

Ex. A to Aff. of David E. McCraw [Dkt. # 10-1] ("McCraw Aff."). The agency identified twenty-one responsive records – some containing communications between Blair and Duffey, and others sent to Blair from Duffey at OMB. *See* OMB *Vaughn* Index, Ex. 5 to Decl. of Heather Walsh [Dkt. # 24-1]. The agency withheld all of them, invoking FOIA Exemption 5, and on May 13, 2020, the Court called for the records to be produced for *in camera* review. Min. Order (May 13, 2020) ("[I]n order to assist the Court in making responsible de novo determinations in this case, including any determination for purposes of the presidential

communications privilege, concerning the nature and extent of the relationship between any particular communication and presidential decisionmaking, and, for purposes of the deliberative process privilege, whether a particular communication is both predecisional and deliberative, defendant is directed to deliver copies of the documents that have been withheld pursuant to Exemption 5 to chambers for in camera inspection on or before May 20, 2020.").

For reasons stated on the record at a hearing in August, the Court denied defendant's initial Cross-Motion for Summary Judgment, [Dkt. # 24], without prejudice and held plaintiffs' Motion for Summary Judgment, [Dkt. # 22] ("Pls.' Mot."), in abeyance pending the submission of additional information and a renewed motion by OMB. *See* Min. Entry (Aug. 10, 2020); *see also* Transcript of Proceedings on August 10, 2020 [Dkt. # 28]. It found that the declaration submitted in support of defendant's motion was deficient, and that the agency had not met its burden to justify the applicability of the exemption.

The matter is now before the Court on defendant's Renewed Motion for Summary Judgment, [Dkt. # 30] ("Def.'s Renewed Mot."), and plaintiffs' original motion. Plaintiffs have opposed defendant's motion, [Dkt. # 31], and OMB has filed a reply. [Dkt. # 32].

Defendant's renewed motion incorporates the sworn declarations submitted in support of the first motion, the Declaration and Supplemental Declaration of Heather V. Walsh, Deputy General Counsel in the OMB Office of General Counsel, [Dkt. # 24-1] ("First Walsh Decl.") and [Dkt. # 26-1] ("Second Walsh Decl."), and those have been supplemented by the Declaration of Mark R. Paoletta, the General Counsel and Chief FOIA Officer in the OMB Office of General Counsel. [Dkt. # 30-1] ("Paoletta Decl.").

The Court has reviewed the declarations and records themselves closely. Because it is necessary to address whether the elements of either privilege have been established on a document

by document basis, it will be more efficient to detail the decision with respect to each record at an oral hearing rather than in a written opinion.  But this order will announce the Court's decisions on the motions and set out the legal authority upon which they are based.

### The Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.

The mere existence of a factual dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 247.

**The Freedom of Information Act**

The Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, compels government agencies to release records upon request. *See* 5 U.S.C. § 552. The act also allows agencies to withhold the requested records if they can demonstrate that the record falls into one of nine specific exemptions. *See id.* § 552(b); *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010).

These exemptions are construed narrowly keeping with FOIA's presumption in favor of disclosure, and the withholding agency bears the burden of showing that the claimed exemption applies. *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). "[W]hen an agency seeks to withhold information, it must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant.'" *Morley v. CIA.*, 508 F.3d 1108, 1122 (D.C. Cir. 2007), quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).

When summary judgment turns upon the applicability of an exemption, the court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempted from disclosure." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003). Moreover, pursuant to a 2016 amendment to the FOIA statute, an agency may withhold information pursuant to an exemption only if it "reasonably foresees that disclosure would harm an interest protected by" that exemption. 5 U.S.C. §552(a)(8)(A). This "reasonable foreseeability of harm" standard requires the withholding agency to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure" of the contested records. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019).

In a FOIA case, a court may grant summary judgment based on information provided in an agency's affidavits or declarations when they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted). Federal Rule of Civil Procedure 56(c) states that "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

It is well established, though, that there are circumstances when an agency declaration may properly include hearsay. The D.C. Circuit "long ago recognized the validity of the affidavit of an individual who supervised a search for records even though the affiant has not conducted the search himself" as sufficient for a declarant in a FOIA action. *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C. Cir. 1986); *see also Humane Soc'y of U.S. v. Animal & Plant Health Inspection Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (acknowledging that hearsay is permissible in justifying the adequacy of the search); *Barnard v. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) ("Consistent with these requirements, hearsay in FOIA [search] declarations is often permissible.").

But courts have not always found hearsay to be sufficient when it is offered to justify the withholding of records based on an exemption. *See Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (district court's grant of summary judgment reversed due to the affiant's lack of personal knowledge of the facts underlying the exemption and his reliance on hearsay); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264–65 (D.D.C. 2004) (court struck portions of the agency FOIA Director's declaration due to a lack of personal knowledge and impermissible hearsay). As the court observed in *Humane Society*, "ultimately, it is the Court, not

the agency, that must be satisfied with the propriety of a claimed FOIA exemption." 386 F. Supp. 3d at 44.

Finally, it is essential that agency affidavits be accurate. "[S]ummary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). As the D.C. Circuit has emphasized, this Court should be able to depend on the accuracy of the submissions that are intended "to permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citations omitted); *see Schiller v. NLRB,* 964 F.2d 1205, 1209 (D.C. Cir. 1992), *abrogated by Milner v. Dep't of Navy*, 562 U.S. 562 (2011) ("FOIA litigation is not immune from our open, adversary process . . . . We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate."); *see also Cause of Action Inst. v. Export-Import Bank of the U.S.*, No. 19-cv-1915 (JEB), 2021 WL 706612, at *14 (D.D.C. Feb. 23, 2021) (ordering disclosure of records when "[e]ven the briefest *in camera* review reveals that [defendant's] description is plainly overbroad and . . . seemingly inaccurate, as their content has nothing to do with" the claimed exemption).

When considering a motion for summary judgment under FOIA, the court must conduct a *de novo* review of the record. *See* 5 U.S.C. § 552(a)(4)(B).

**FOIA Exemption 5**

Defendant withheld all responsive records in this case pursuant to FOIA Exemption 5, which bars disclosure of "inter-agency or intra-agency memorandums or letters which would not

6

be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

A document may be properly withheld under Exemption 5 if it satisfies "two conditions: its source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), quoting *Taxation Without Representation v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981) (Exemption 5 encompasses "the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including . . . the executive 'deliberative process privilege.'").

Here, the agency invoked the Presidential communications privilege and the deliberative process privilege. Both have been found to be incorporated in Exemption 5. *Loving*, 550 F.3d at 37.

### The Presidential Communications Privilege

In *United States v. Nixon,* 418 U.S. 683 (1974), the Supreme Court explained that a "presumptive privilege for Presidential communications . . . is fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *Id*. at 708.

> A President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately.

*Id.*

None of the documents at issue constitute communications to or from the President. But there are statements in some that reveal Presidential communications or deliberations, and those too are covered by the privilege. As other courts in this district have recognized, the privilege is not "claimed over the documents themselves, but rather the communications memorialized within them." *Citizens for Responsibility & Ethics in Wash. v. Dep't of Homeland Sec.*, No. 06-cv-0173 (RJL), 2008 WL 2872183, at *3 (D.D.C. July 22, 2008); *see also Buzzfeed, Inc. v. FBI*, No. 18-cv-2567 (BAH), 2020 WL 2219246, at *7 (D.D.C. May 7, 2020); *Prop. of the People, Inc. v. Office of Mgmt. & Budget*, 330 F. Supp. 3d 373, 387 (D.D.C. 2018) ("Courts in this district have also found that the privilege extends to internal agency documents that memorialize privileged communications between the agency and President or immediate White House advisers.").

That is not where the privilege stops, however. Because the privilege is designed to preserve "the President's ability to obtain candid and informed opinions from his advisors," *Loving,* 550 F.3d at 37, the D.C. Circuit has held that it protects not only communications directly involving and documents actually viewed by the President, but also "documents 'solicited and received' by the President or his 'immediate White House advisers [with] . . . broad and significant responsibility for investigating and formulating the advice to be given to the President.'" *Id.*, quoting *Judicial Watch, Inc., v. Dep't of Justice,* 365 F.3d 1108, 1114 (D.C. Cir. 2004).

> [T]he public interest is best served by holding that communications made by presidential advisers in the course of preparing advice for the President come under the presidential communications privilege, even when these communications are not made directly to the President. Given the need to provide sufficient elbow room for advisers to obtain information from all knowledgeable sources, the privilege must apply both to communications which these advisers solicited and received from others as well as those they authored themselves. The privilege must also extend to communications

8

> authored or received in response to a solicitation by members of a presidential adviser's staff, since in many instances advisers must rely on their staff to investigate an issue and formulate the advice to be given to the President.

*In re Sealed Case (Espy)*, 121 F.3d 729, 749 (D.C. Cir. 1997).

Given the breadth and level of protection accorded to Presidential communications, though, the Circuit has also emphasized that this extension of the privilege must be "limited":

> We are aware that such an extension, unless carefully circumscribed to accomplish the purposes of the privilege, could pose a significant risk of expanding to a large swath of the executive branch a privilege that is bottomed on a recognition of the unique role of the President. In order to limit this risk, the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected.
>
> Not every person who plays a role in the development of presidential advice, no matter how remote and removed from the President, can qualify for the privilege. In particular, the privilege should not extend to staff outside the White House in executive branch agencies. Instead, the privilege should apply only to communications authored or solicited and received by those members of an immediate White House adviser's staff who have broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate. Only communications at that level are close enough to the President to be revelatory of his deliberations or to pose a risk to the candor of his advisers.

*Id.* at 751–52,[1] citing *Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 997 F.2d 898, 910 (D.C. Cir. 1993); *see, e.g.*, *Ctr. for Biological Diversity v. Office of Mgmt. & Budget*,

---

1   While *Espy* makes it clear that the Presidential communications privilege is not, like the deliberative process privilege, limited to "pre-decisional" communications, the justification for its expansion beyond the President himself to his advisors is the need for candor and for information gathered from other sources before a decision is made, and during the formulation of advice to be given to the President before it is rendered. *See* 121 F.3d at 737, 743. As the court in *Center for Effective Government v. U.S. Department of State* observed, the application of the privilege "is no broader than necessary to ensure that the confidentiality of the presidential decision-making process, and its concomitant decision-making benefits, are adequately protected." 7 F. Supp. 3d 16, 24 (D.D.C. 2013) (internal quotations omitted.).

625 F. Supp. 2d 885, 891–92 (N.D. Cal. 2009) (district court declined to extend the privilege to intra-agency communications even though they concerned the preparation of a presentation for the President).

### Deliberative Process Privilege

The deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Espy*, 121 F.3d at 736–37 (internal quotations omitted). The Supreme Court explained that it "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975).

To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

A document is predecisional if "'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Judicial Watch, Inc.*, 449 F.3d at 151, quoting *Coastal States*, 617 F.2d at 866. In other words, a "'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Formaldehyde Inst.*, 889 F.2d at 1122, quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

10

> The agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process . . . . [I]f documents are not a part of a clear "process" leading to a final decision on the issue . . . they are less likely to be properly characterized as predecisional[.]

*Coastal States*, 617 F.2d at 868, citing *Vaughn v. Rosen*, 523 F.2d 1136, 1146 (D.C. Cir. 1975).[2]

Chronology is not the beginning and end of the inquiry, though; in *Judicial Watch, Inc. v. FDA*, the Court of Appeals recognized that "documents dated after [the decision at issue] may still be predecisional and deliberative with respect to other, nonfinal agency policies . . . . A contrary rule would undermine the privilege's purpose to encourage 'honest and frank communication within the agency' without fear of public disclosure."  449 F.3d at 151–52, quoting *Coastal States,* 617 F.2d at 866; *see also Mead Data Ctr., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 256 (D.C. Cir. 1977) ("[T]he quality of administrative decision-making would be seriously undermined if agencies were forced to 'operate in a fishbowl' because the full and frank exchange of ideas on legal or policy matters would be impossible.").  But the opinion emphasized that the agency must supply sufficient information to enable a court to determine whether a communication after a policy was decided was in furtherance of a subsequent agency action:  "It may be that reflections on an already-decided policy are neither predecisional nor indicative of the deliberative process of the government.  After all, 'Exemption five is intended to protect the deliberative process of government and not just deliberative material.'" *Judicial Watch, Inc.*, 449 F.3d at 151, quoting *Mead Data Ctr.*, 566 F.2d at 256.  In sum, one can only decide whether a document generated after an agency decision has been made is deliberative with respect to another decision on a case by case basis.

---

2   *See also Coastal States*, 617 F.2d at 868 ("Characterizing [] documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word.  No 'decision' is being made or 'policy' being considered . . . .").

11

With respect to the "deliberative" prong of the test – the second prong – the exemption "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63 (D.C. Cir. 1974). But the agency "cannot simply rely on generalized assertions that disclosure could chill deliberations." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (citation omitted).

As the D.C. Circuit explained in the *Espy* case:

> Both requirements stem from the privilege's "ultimate purpose[, which] . . . is to prevent injury to the quality of agency decisions" by allowing government officials freedom to debate alternative approaches in private. The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.

121 F.3d at 737 (citations omitted).

While Exemption 5 recognizes both privileges, the deliberative process privilege is easier to overcome than the privilege that covers Presidential communications. "[C]ongressional or judicial negation of the presidential communications privilege is subject to greater scrutiny than denial of the deliberative privilege." *Id.* at 745. Moreover, the deliberative privilege is a qualified privilege, and it can be overcome by a sufficient showing of need. *Id.* at 738.

Finally, "[b]efore approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (collecting cases). Any reasonably segregable portion of a withheld record must be released by the agency, unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Ctr.*,

566 F.2d at 260; *see also Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Ctr.*, 566 F.2d at 261.

## HOLDING

Applying these principles, based upon its consideration of the pleadings, the declarations and records themselves, and for the reasons to be set forth at a hearing to be held in this case on a date to be established in consultation with the parties, it is hereby **ORDERED** that:

Defendant's Renewed Motion for Summary Judgment, [Dkt. # 30], is **DENIED** in part and **GRANTED** in part, and Plaintiffs' Motion for Summary Judgment, [Dkt. # 22], is **GRANTED** in part and **DENIED** in part. In light of the supplementary declaration provided in support of the renewed motion, the record now includes sufficient grounds to find that at the time in question, Robert Blair was a member of the staff of an immediate advisor to the President, and that he had broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate. *See* Paoletta Decl. ¶¶ 5, 7, 8, 9, 10, 11, 12, and 13. So judgment will be entered in favor of the defendant on that issue.

But the Court also finds, for reasons that will be detailed with respect to individual documents at the hearing, that a number of records must be released in whole or in part. While agency affidavits are generally entitled to deference, and there are circumstances in which the affiants may rely on hearsay, the Court discovered that there were obvious differences between the affiants' description of the nature and subject matter of the documents, and the documents

themselves.  Under those circumstances, with respect to such questions as whether individual communications were predecisional or deliberative for purposes of the deliberative process privilege, or solicited for purposes of the Presidential communications privilege, the statements of declarants who lacked personal knowledge, which were contradicted by other evidence in the record, were not sufficient to meet the government's burden of proof.  Therefore, the Court finds that the following records must be produced:

>Document 1
>Document 2
>Document 3 [in part:  release all but the 8/23/19 email from Blair to Duffey]
>Document 4
>Document 5
>Document 11
>Document 19
>Document 20
>Document 21 [in part:  release the first paragraph of the 7/17/19 email from Duffey to Blair]

The withholding of the following documents or portions of documents was justified under the Presidential communications privilege (unless otherwise noted):

>Document 3 [in part:  Blair 8/23/19 email to Duffey was properly withheld under Presidential communications privilege]
>Document 6
>Document 7
>Document 8
>Document 9
>Document 10
>Document 12
>Document 13
>Document 14
>Document 15
>Document 16
>Document 17
>Document 18
>Document 21 [in part:  first paragraph of 7/18/19 email from Blair to Duffey was properly withheld under Presidential communications privilege; second

paragraphs of both emails in the chain were properly withheld under the deliberative process privilege]

But while Documents 7, 9, 10, 14, 15, and 17 (all attachments to emails from Duffey to Blair) technically fall within the ambit of the privilege, the Court is unable to discern the basis for a conclusion that it is reasonably foreseeable that the release of those records in particular would harm the interests intended to be protected by the privilege. Therefore, by April 12, 2021, defendant must either inform the Court that the records will be produced, or comply more fully with section 552(a)(8)(A). Defendant must make a similar showing with respect to that portion of Document 21 consisting of the first paragraph of the 7/18/19 email from Blair to Duffey.

The Court will set a date for the production of the records at the hearing.

                                             _____
                                             AMY BERMAN JACKSON
                                             United States District Judge

DATE: March 29, 2021